# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| THOMAS GILBERT LEHOTSKY, | Cause No. CV-21-98-BMM |
| Plaintiff, | |
| vs. | **ORDER** |
| KILOLO KIJAKAZI, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Thomas Gilbert Lehotsky ("Lehotsky") brings this action under 42 U.S.C. § 405(g), seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner"). (Doc. 1); (Doc. 10.) The Commissioner denied Lehotsky disability benefits at the initial and reconsideration levels. (Doc. 10 at 5.) Administrative Law Judge ("ALJ") Michele Kelley issued an unfavorable decision on May 26, 2021. (*Id.* at 5.) The Appeals Council denied Lehotsky's request for review on July 27, 2021. (Doc. 1-1); (Doc. 10 at 6-7.)

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Lehotsky resides in Cascade County, Montana. 29 U.S.C. § 1391(e)(1); (Doc. 1.)

1

## PROCEDURAL BACKGROUND

Lehotsky first received a 100 percent, service-connected disability determination from the Department of Veterans Affairs ("VA"). (Doc. 5 at 200.) Lehotsky filed a Title II application for a period of disability and disability insurance benefits on October 1, 2018. (Doc. 5 at 182.) Lehotsky alleges disability beginning on June 1, 2018. (Doc. 5 at 212.)

The ALJ identified that Lehotsky had the following severe impairments: degenerative disc disease, trochanteric bursitis, bilateral epicondylitis and degenerative joint disease bilateral elbows with mild ulnar neuropathy, right knee chondromalacia and medial meniscus tear, shoulder osteoarthritis, loose body, labral cyst, acromial impingement, tendinosis supraspinatus and bicipital tendons, and obesity, none of which met or medically equaled the severity of one of the listed impairments. (*Id.* at 21-22.) The ALJ found that Lehotsky maintained the residual functional capacity to perform light work with some limitations. (*Id.* at 24). The ALJ concluded that Lehotsky was not disabled. (*Id.* at 28.) The Appeals Council denied Lehotsky's request for review on July 27, 2021, making the ALJ decision a final agency action. (*Id.* at 5-7.) Lehotsky filed his Complaint in this Court on March 18, 2022. (Doc. 1.)

## STANDARD OF REVIEW

The Court conducts a limited review in this matter. The Court may set aside the Commissioner's decision only where the decision lacks the support of substantial

evidence or where the decision bases itself on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence also has been described as "more than a mere scintilla," but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382(a)(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential evaluation process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The five steps are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. § 416.920(e).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. § 404.1520(f), 416.920(f).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. § 416.920(g).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof at steps one through four. *See id.* The Commissioner bears the burden of proof at step five. *See id.*

## BACKGROUND

### I. The ALJ's Determination

The ALJ followed the 5-step sequential evaluation process in evaluating Lehotsky's claim. At step one, the ALJ found that Lehotsky had not engaged in substantial gainful activity since June 1, 2018. (Doc. 5 at 21.)

4

At step two, the ALJ identified that Lehotsky had the following severe impairments: degenerative disc disease, trochanteric bursitis, bilateral epicondylitis and degenerative joint disease bilateral elbows with mild ulnar neuropathy, right knee chondromalacia and medial meniscus tear, shoulder osteoarthritis, loose body, labral cyst, acromial impingement, tendinosis supraspinatus and bicipital tendons, and obesity. (*Id.* at 21.)

At step three, the ALJ found that Lehotsky did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* at 22.)

At step four, the ALJ found that Lehotsky possessed the residual functional capacity to perform the following light work:

> can lift, carry, push, and pull ten pounds frequently and twenty pounds occasionally; can walk and stand about six hours in an eight hour work day with normal breaks; can sit about six hours in an eight hour work day with normal breaks; needs to alternate sitting, standing and walking during normal work breaks (normal breaks defined as occurring every 2 hours with two breaks lasting at least 10 minutes and one lasting at least 30 minutes); can frequently climb ramps and stairs, balance, kneel, crouch, and crawl; can occasionally stoop, and climb ladders, ropes and scaffolds; needs to avoid concentrated exposure to extreme cold, vibration, and hazards, including wet, slippery, and uneven surfaces, unprotected heights, and dangerous machinery; can occasionally reach overhead bilaterally; can understand, remember, and carry out simple, detailed, and complex tasks; can maintain attention, concentration, persistence, and pace for such tasks for 8-hour workdays & 40-hour workweeks; can tolerate interaction with supervisors, coworkers, and the

> public; can tolerate usual work situations; can tolerate changes in routine work settings. All limitations are considered sustained work activities in an ordinary work setting on a regular and continuing basis.

(*Id.* at 24.) The ALJ found that Lehotsky could perform past his past work as a correctional officer, security guard, and switchboard operator based on this residual functional capacity. (*Id.* at 27.) The ALJ concluded that Lehotsky was not disabled as defined in the Social Security Act from June 1, 2018, through the date of their decision. (*Id.* at 28.)

## II. Lehotsky's Position

Lehotsky argues that the ALJ erred starting at step three in the evaluation process. (Doc. 10 at 14-21.) Lehostky claims that the ALJ erred in the following ways: 1) the ALJ improperly relied on Lehotsky's activities of daily living in determining Lehotsky's residual functional capacity, resulting in an incomplete hypothetical question posed to the Vocational Expert ("VE"); and 2) the ALJ failed to provide sufficient reasons for assigning little weight to Lehotsky's 100 percent VD disability rating. (*Id.* at 14, 21.)

## III. Commissioner's Position

The Commissioner asserts that the Court should affirm the ALJ's decision because the ALJ properly concluded that Lehotsky was not disabled from June 1, 2018, through the date of the decision. (Doc. 11 at 3.) The Commissioner argues that substantial evidence supported the ALJ assessment of Lehotsky's symptom

allegations. (*Id.* at 12-14.) The Commissioner also argues that the ALJ properly considered the medical evidence from the VA under the new regulations.

## DISCUSSION

Lehotsky argues that the ALJ erred in several ways. The Court agrees that the ALJ failed to consider properly the medical evidence and opinions in the record; misinterpreted non-treatment considerations in order to discount Lehotsky's testimony; and failed to pose a complete hypothetical question to the VE. The Court will reverse the case for an award of benefits.

**I. Whether the ALJ improperly weighed medical opinions in the record**

The ALJ's evaluation of the medical opinion evidence remains subject to the amended regulations pertaining to all claims filed after March 27, 2017. Under the new regulations, the ALJ "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867-68 (Jan. 18, 2017); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017).

These regulations do away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct the ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion

7

or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c). Supportability and consistency represent the two most important factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

The regulations require the ALJ to articulate how persuasive they find all of the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b). As a result, the ALJ must explain how they considered the supportability and consistency factors in the decision. Generally, the ALJ is not required to explain how they considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2). When the ALJ finds, however, that two or more medical opinions are equally well-supported and consistent with the record but are not exactly the same, the ALJ must articulate how they "considered the other most persuasive factors." 20 C.F.R. §§ 404.1520c(b)(3), 416.920(b)(2). The new regulations still require the ALJ to provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. *Sollars v. Kijakazi*, No. CV-20-58-BU-BMM, 2021 WL 4963611, at *3 (D. Mont. Oct. 26, 2021) (citing *Beason v. Saul*, 2020 WL 606760, at *3 (C.D. Cal. Feb. 7, 2020)).

Lehotsky claims disability based upon a combined set of symptoms including degenerative disc disease, left hip joint deterioration, neuromas in both feet, missing nerves in his left foot, bilateral shoulder dysfunction and pain, high blood pressure,

high cholesterol, gastrointestinal reflux disease, and hyperthyroidism. (Doc. 10 at 5.) The ALJ acknowledged Lehotsky's medically determinable "severe" impairments and found these "impairments could reasonably be expected to cause [Lehotsky's] symptoms." (Doc. 5 at 25.) The ALJ found, however, that Lehotsky's statements concerning the intensity, persistence, and limiting effects of those conditions were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ concluded that the medical evidence did not support Lehotsky's claimed functional compromise. (*Id.*) In making these findings, the ALJ considered the Lehotsky's treatment records, the state agency medical consultants preparing Lehotsky's Disability Determination Services opinion, one vocational expert, and testimonial evidence from Lehotsky. (*Id.* at 19-32.)

*Lehotsky's prior administrative medical findings*

Lehotsky argues that the ALJ failed to consider properly the evidence underlying his 100 percent VA disability rating. (*Id.* at 21.) Prior administrative findings and decisions do not bind an ALJ. 20 C.F.R. § 404.1504. The new regulations require that an ALJ consider only "the supporting evidence underlying the other governmental agency or nongovernmental entity's decision []receive[d] as evidence in [a] claim." *Id.* § 404.1504(a)(1). The administrative record does not include any of the supporting evidence underlying the VA disability rating. (*See* Doc. 5.) The Court will not review the ALJ's consideration of Lehotsky's disability rating for this reason.

*Medical Opinions.*

Medical records from treating physicians document Lehotsky's chronic musculoskeletal pain, lumbar and cervical degenerative disc disease, hip joint deterioration, shoulder deterioration, surgeries, and numerous injections and ablations. The medical records show that these complaints predate, and have continued past, his alleged onset date. Lehotsky underwent two discectomies, in 2003 and 2007, that failed to control his pain. (*Id.* at 441-42.) Later imaging from June 2017 showed subsequent moderate multi-level degenerative changes. (*Id.* at 441-42.)

Lehotsky began regular treatments with a Benefis Hospital pain management provider, Dr. Spanbauer. Lehotsky now has treated with Dr. Spanbauer for several years. Lehotsky's records from October 2017 indicate that his back pain persisted due to his degenerative disc disorder. This doctor recommended radiofrequency ablations. (*Id.* at 330.) Lehotsky has continued to receive radiofrequency ablations, including a radiofrequency ablation procedure in May 2019 and a repeat procedure in October 2020 that his provider noted also failed to fully resolve Lehotsky's back pain. (*Id.* at 914, 918, 1425.)

Lehotsky's medical records from June and August 2018 and March 2019 reveal that hip joint injections have failed to control pain from his hip joint deterioration. (*Id.* at 305.) The records indicate that these injections provide only temporary, partial relief for Lehotsky's pain and that physical therapy and

10

medications do not relieve the pain at all. (*Id.* at 305, 373-77.) The August 2018 treatment records also confirm that Lehotsky's chronic musculoskeletal, back, and hip pain continued, and Dr. Spanbauer ordered additional steroid and anesthetic injections. (*Id.* at 377.)

More recent records from 2020 reveal Dr. Spanbauer's assessment of Lehotsky's back pain as lasting at least "three months of moderate to severe pain with functional impairment." (*Id.* at 1200.) This assessment came after several years of Benefis Hospital's having treated Lehotsky's recurring pain. The treatment records and treating providers, in sum, document Lehotsky's "chronic" pain, including refractory hip joint pain, that continues to return even after treatment with surgery, medications, chiropractic or physical therapy, TENS units, psychological therapy, and bracing. (*See, e.g.*, *id.* at 750, 758, 762, 1083.)

The ALJ improperly discounted the opinions of Lehotsky's treating physicians. (*Id.* at 25-26.) The ALJ failed to address in any fashion how persuasive they found the medical opinions of treating physicians contained within Lehotsky's records. (*Id.* at 24-26.) The ALJ made no reference to the supportability and consistency factors in the review of Lehotsky's treating providers' notes. This failure runs afoul of 20 C.F.R. §§ 404.1520(b)-(c), which sets forth the "articulation requirements" for an ALJ's evaluation of medical opinion evidence. The ALJ's findings are thus not legally sufficient. *See Sollars v. Kijakazi*, No. CV-20-58-BU-

11

BMM, 2021 WL 4963611, at *3 (D. Mont. Oct. 26, 2021) (citing *Beason v. Saul*, 2020 WL 606760, at *3 (C.D. Cal. Feb. 7, 2020)).

## II.     Whether the ALJ improperly discounted Lehotsky's testimony

The ALJ afforded disproportionate weight to non-treatment considerations such as Lehotsky's purported ability to perform daily activities. (*Id.* at 27.) The ALJ concluded that Lehotsky is not disabled because he participates in the following activities: Lehotsky exercises, walks his dog, "prepare[s] and cook[s] meals," "dress[es] and bath[es] without problems," completes household and yard work, "shop[s] several times a week," and participates in outdoor activities including watching high school sporting events and wildlife viewing near a river. (*Id.* at 26-27.) The ALJ found Lehotsky's daily activities to be "inconsistent" with his claimed "functional compromise" (*Id.* at 25.)

The ALJ, in weighing those non-treatment considerations, failed to note that the record shows that Lehotsky requires his wife's assistance to cook meals that require standing in the kitchen. (*Id.* at 270.) Lehotsky does not attend outdoor events often. (*Id.* at 272.) His participation in outdoor activities results in significant pain that can persist for days after the event. (*Id.*) Lehotsky cannot stand for more than fifteen minutes. (*Id.* at 275.) Lehotsky cannot sit for more than thirty minutes on a cushioned chair and for not more than two or three minutes on a firm surface. (*Id.* at 275.) Lehotsky spends sixty percent of his normal days in a recliner with his feet elevated in order to rest his back and feet. (*Id.* at 46.) The record also shows that

Lehotsky's exercise or "working out" consists of a physical therapy program. (*Id.* at 48.) These exercises consist of slowly walking on a treadmill with hand supports and stretching exercises. (*Id.* at 48.) Lehotsky limits his use of weights to two and one-half pound weights for his arms and only ten-pound weights for his legs. (*Id.*) The record also shows that Lehotsky remains able to drive, but his spouse transports him for some activities, including to exercise. (*Id.* at 50.)

"[T]he fact that a Plaintiff regularly engages in some activity does not disprove a disability." *Contreras v. Saul*, 477 F. Supp. 3d. 1107, 1125 (S.D. Cal. 2020). The Court will not penalize disability claimants such as Lehotsky for attempting to live normal lives. *Id.* Lehotsky's daily activities ultimately support, rather than undermine, the contention that he is disabled. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

**III.     Whether the ALJ posed a complete hypothetical question to the Vocational Expert**

The ALJ's determination disregarded testimony from the Vocational Expert ("VE") that captured Lehotsky's combination of impairments. The ALJ's first two hypotheticals involved a hypothetical person with an ability to lift 10 pounds frequently, occasionally reach overhead, and walk and stand for six hours and sit for six hours in an eight-hour day. (Doc. 5 at 53-55.) The VE identified that such a person could perform work as a corrections officer, security guard, and switchboard operator. (*Id.* at 54-55.) The VE identified that this hypothetical person would lack

transferrable work skills that would qualify them for other jobs in the national economy. (*Id.* at 54.) The ALJ's third hypothetical involved an ability to walk and stand for four hours in an eight-hour work day. (*Id.* at 55-56.) The VE identified the switchboard operator as the only available position. (*Id.* at 55-56.)

The ALJ's final hypothetical concerned a requirement of "off-task" time for at least twenty percent of a hypothetical person's eight-hour work day and forty-hour work week. (*Id.* at 56.) The VE testified that these requirements would mean "there would be no work, past work or otherwise, for this individual." (*Id.*)

The ALJ's determination that Lehotsky could perform his past jobs as a correction officer, security guard, or switchboard operator inaccurately reflects Lehotsky's residual functional capacity. (*Id.* at 50-55.) Lehotsky requires frequent breaks from sitting and standing, including the need to recline for sixty percent of the day. (*Id.* at 46-50, 270-275.) The VE's testimony establishes that these requirements render Lehotsky unable to work. (*Id.* at 130.) The ALJ committed legal error in failing to account for the VE's testimony regarding limitations and requirements that match Lehotsky's circumstances.

The ALJ accordingly committed the following independent errors, each constituting reversible legal error: failing to consider all evidence underlying the VA's prior medical findings; misinterpreting non-treatment considerations to discount Lehotsky's testimony; and failing to account for VE testimony

demonstrating that Lehostky's combination of impairments ruled out work. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

## CONCLUSION

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). When the record is fully developed and further proceedings would serve no useful purpose, the Court may remand for an immediate award of benefits. *Id.* Remand for an award of benefits proves appropriate if there are no outstanding issues that must be resolved before a determination of disability can be made and if it is clear from the record that the ALJ would be required to find the claimant disabled if the ALJ properly had credited a treating or examining physician's opinion. *Id.* (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)).

Remand for an immediate award of benefits proves appropriate here. The record has been fully developed. Further proceedings would serve no useful purpose. No outstanding issues exist that must be resolved before a determination of disability can be made. The record demonstrates that the ALJ would have been required to find Lehotsky disabled from June 1, 2018, had the ALJ credited properly the medical opinion sources, the VE, and Lehotsky's testimony. *Beneke*, 379 F.3d at 593. The Court will reverse the Commissioner's final decision denying Lehotsky disability insurance benefits and remand for an immediate award of benefits.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Commissioner's final decision denying Lehotsky's claims for disability insurance benefits is **REVERSED** and **REMANDED** for an immediate award of benefits from June 1, 2018, through the date last insured.

2. The Clerk of Court is directed to enter judgment accordingly.

DATED this 30th day of November, 2022.

_____
Brian Morris, Chief District Judge
United States District Court