# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| THOMAS GILBERT LEHOTSKY, | **Cause No. CV-21-98-GF-BMM** |
| Plaintiff, | |
| vs. | **ORDER** |
| KILOLO KIJAKAZI, Commissioner of Social Security, | |
| Defendant. | |

Thomas Gilbert Lehotsky ("Lehotsky") brought this action under 42 U.S.C. § 405(g), seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner"). (Doc. 1); (Doc. 10.) The Commissioner denied Lehotsky disability benefits at the initial and reconsideration levels. (Doc. 10 at 5.) Administrative Law Judge ("ALJ") Michele Kelley issued an unfavorable decision on May 26, 2021. (*Id.* at 5.) The Appeals Council denied Lehotsky's request for review on July 27, 2021. (Doc. 1-1); (Doc. 10 at 6-7.)

This Court reversed the Commissioner's final decision denying Lehotsky's claims for disability insurance benefits and remanded it for an immediate award of benefits. (Doc. 14.) The Commissioner has moved to alter the judgment. (Doc. 17.)

1

## PROCEDURAL BACKGROUND

Lehotsky filed a Title II application for a period of disability and disability insurance benefits on October 1, 2018. (*Id.* at 182.) Lehotsky alleged disability beginning on June 1, 2018. (*Id.* at 212.) The ALJ then issued an unfavorable disability determination. (*Id.* at 28.)

The ALJ's decision identified that Lehotsky had the following severe impairments: degenerative disc disease, trochanteric bursitis, bilateral epicondylitis and degenerative joint disease bilateral elbows with mild ulnar neuropathy, right knee chondromalacia and medial meniscus tear, shoulder osteoarthritis, loose body, labral cyst, acromial impingement, tendinosis supraspinatus and bicipital tendons, and obesity, none of which met or medically equaled the severity of one of the listed impairments. (*Id.* at 21-22.) The ALJ found that Lehotsky maintained the residual functional capacity to perform light work with some limitations. (*Id.* at 24). The ALJ concluded that Lehotsky was not disabled. (*Id.* at 28.)

## DISCUSSION

*Medical opinions*

The Court's Order identified errors in the ALJ's decision. (Doc. 14.) The Court first identified that the ALJ did not address the medical opinions of treating physicians contained within Lehotsky's records. (*Id.* at 7.) The Court noted that Lehotsky's pain management doctor had determined that, in 2020, Lehotsky suffered from back pain "of moderate to severe [intensity] with functional impairment." (*Id.*

2

at 1200.) The Court identified that the ALJ had not addressed the supportability and consistency factors in the review of Lehotsky's treating providers, including this assessment of Lehotsky's pain.

The Commissioner correctly points out that the treating physician's identification of functional impairments does not offer an assessment of the ultimate issue of disability. (Doc. 18 at 7.) The Court clarifies that medical opinions represent statements from a medical source about what a claimant can still do despite his impairments and whether he has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). Lehotsky's treating physician did not describe what Lehotsky still could do despite his functional impairments. The Court clarifies that Lehotsky has offered no medical opinion evidence in support of his claim.

*Lehotsky's testimony*

The Court's Order then determined that the ALJ improperly discounted Lehotsky's testimony regarding the intensity, persistence, and limiting effects of his symptoms. (Doc. 14 at 12-13.) The ALJ had concluded that Lehotsky was not disabled because he participates in various daily activities, for example, that Lehotsky exercises, walks his dog, "prepare[s] and cook[s] meals," "dress[es] and bath[es] without problems," completes household and yard work, "shop[s] several times a week," and participates in outdoor activities including watching high school sporting events and wildlife viewing near a river. (*Id.* at 26-27.) The ALJ had found

Lehotsky's daily activities to be "inconsistent" with his claimed "functional compromise" (*Id.* at 25.) The Court articulated that "the fact that a Plaintiff regularly engages in some activity does not disprove a disability." (Doc. 14 at 13) (citing *Contreras v. Saul*, 477 F. Supp. 3d. 1107, 1125 (S.D. Cal. 2020)). The Court accordingly determined that the ALJ had afforded disproportionate weight to non-treatment considerations. (*Id.* at 12-13.)

The Commissioner now argues that the Court did not consider all the reasons the ALJ provided for discounting Lehotsky's testimony. (Doc. 18 at 9.) The Commissioner claims that, separate from the activities of daily living analysis, the ALJ also found Lehotsky's allegations were inconsistent with the objective medical evidence. (Doc. 18 at 9-10.)

An ALJ may find a claimant not credible if the medical record contradicts the claimant's subjective testimony. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The Ninth Circuit requires an ALJ to provide "specific, clear and convincing reasons" to reject a claimant's testimony, however, once the ALJ has determined that a claimant's medically determinable impairments might reasonably produce the alleged symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). ALJs do not satisfy the "specific, clear and convincing reasons" standard when they "simply

4

state[] . . . [a] non-credibility conclusion and then summarize[] the medical evidence supporting [the] . . . determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

The ALJ's analysis here proves similar to the analysis of which the Ninth Circuit disapproves. *Id.* The ALJ determined that Lehotsky's impairments could produce his symptoms. (Doc. 5 at 25.) The ALJ then summarized Lehotsky's testimony, stated that Lehotsky's statements were "not entirely consistent with the medical evidence and other evidence in the record," and then summarized the medical evidence and Lehotsky's reported activities supporting the ALJ's conclusion. (*Id.* at 25-26.) The ALJ made no statement explaining which of, and how, Lehotsky's statements conflict with the summary that the ALJ provided. (*Id.*)

The Ninth Circuit has explained that, "[a]lthough the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make." *Brown-Hunter*, 806 F.3d at 494. The ALJ's summary of Lehotsky's claims and the ALJ's summary of the evidence supporting her decision, when read in quick succession, might suggest some inconsistencies. (Doc. 5 at 24-26.) The ALJ never identifies them. The Ninth Circuit has noted that this type of error usually does not prove harmless. *Brown-Hunter*, 806 F.3d at 492.

*Brown-Hunter* requires the ALJ, not the Court, to explain what specific evidence was inconsistent with a specific claim from the claimant. *See Brown-*

5

*Hunter*, 806 F.3d at 494. The Court reiterates that the ALJ improperly discredited Lehotsky's testimony.

*Hypothetical presented to the VE*

The Court's Order also explained that the ALJ failed to present a complete hypothetical question to the vocational expert. The ALJ's first two hypotheticals involved a hypothetical person with an ability to lift 10 pounds frequently, occasionally reach overhead, and walk and stand for six hours and sit for six hours in an eight-hour day. (Doc. 5 at 53-55.) The VE identified that such a person could perform work as a corrections officer, security guard, and switchboard operator. (*Id.* at 54-55.) The VE identified that this hypothetical person would lack transferrable work skills that would qualify them for other jobs in the national economy. (*Id.* at 54.) The ALJ's third hypothetical involved an ability to walk and stand for four hours in an eight-hour workday. (*Id.* at 55-56.) The VE identified the switchboard operator as the only available position. (*Id.* at 55-56.)

The ALJ's final hypothetical concerned a requirement of "off-task" time for at least twenty percent of a hypothetical person's eight-hour workday and forty-hour work week. (*Id.* at 56.) The VE testified that these requirements would mean "there would be no work, past work or otherwise, for this individual." (*Id.*)

The ALJ's determination that Lehotsky could perform his past jobs as a correction officer, security guard, or switchboard operator inaccurately reflects Lehotsky's residual functional capacity. (*Id.* at 50-55.) Lehotsky requires frequent

breaks from sitting and standing, including the need to recline for sixty percent of the day. (*Id.* at 46-50, 270-275.) The ALJ failed to present all of Lehotsky's limitations to the vocational expert. (*Id.*) This resulted in an incomplete hypothetical.

*Lehotsky's VA rating*

The Court's Order also declined to review the ALJ's consideration of Lehotsky's 100 percent VA disability rating in response to Lehotsky's argument that the ALJ failed to consider the prior rating. (Doc. 14 at 9.) Lehotsky in his Opening Brief argued that the ALJ was required to articulate specific reasons for rejecting the VA's finding. (Doc. 10 at 18.) Lehotsky later argued that the ALJ must consider all the supporting evidence underlying the VA's decision. (Doc. 12 at 2.)

The Court characterized the VA rating as a prior administrative finding but explained that the VA's decision did not bind the ALJ. 20 C.F.R. § 404.1504. The Court explained that the new regulations require that an ALJ consider only "the supporting evidence underlying the other governmental agency or nongovernmental entity's decision []receive[d] as evidence in [a] claim." *Id.* § 404.1504(a)(1). The Court's Order noted that the administrative record did not include the evidence underlying Lehotsky's VA disability rating. (Doc. 14 at 9.)

The Commissioner has pointed out that the administrative record includes many of Lehotsky's VA treatment records. (Doc. 18 at 6.) The majority of these treatment records come after February 23, 2018, however, the date on which the VA found Lehotsky 100 percent disabled. (Doc. 5 at 41.) The Court determines that

7

treatment notes generated after Lehotsky received his VA rating could not have formed the supporting evidence underlying the VA's initial 100 percent disability decision. The ALJ could consider these records as they would other medical evidence or objective medical evidence, depending on the appropriate category.

The Court also notes that the record does not include Lehotsky's VA disability determination letter or its identified sources of information; it only includes a verification of his VA rating. (Doc. 5 at 200.) The record does not include the VA's compensation evaluations or examinations of Lehotsky, and it does not contain any materials identified as inclusions in Lehotsky's VA disability application. (*Id.*) The Court rearticulates that the fact of Lehotsky's VA rating itself did not require the ALJ to provide any analysis of the VA's decision.

## CONCLUSION

The Court's Order remanded the Commissioner's decision for an immediate award of benefits. (Doc. 14 at 16.) The Commissioner points out that Lehotsky did not request this remedy. (Doc. 18 at 11.) The Court has clarified its previous Order and has rearticulated the ALJ's errors. The Court will remand the Commissioner's final decision for further proceedings.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Commissioner's Motion (Doc. 17) is **GRANTED**.

2. The Commissioner's final decision denying Lehotsky's claims for disability benefits is **REMANDED** for further proceedings consistent with this Order.

3. The Clerk is directed to amend the Judgment (Doc. 15) consistent with this Order.

DATED this 19th day of January, 2023.

_____
Brian Morris, Chief District Judge
United States District Court